UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PINNACLE MADISON AVENUE CORPORATION,

              Petitioner,

-against-

ITALIAN TRADE AGENCY (ITA), an agency of the REPUBLIC OF ITALY,

              Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _2/3/2025_

22 Civ. 3841 (AT) (SLC)

**ORDER ADOPTING REPORT AND RECOMMENDATION**

ANALISA TORRES, District Judge:

    Petitioner, Pinnacle Madison Avenue Corporation ("Pinnacle"), filed a petition (the "Petition") in Supreme Court, New York County, seeking access to property owned by Respondent, Italian Trade Agency ("ITA"), under Section 881 of the New York Real Property Actions and Proceedings Law ("RPAPL"). *See generally* Pet., ECF No. 1-2. After ITA removed the Petition to this Court, and pursuant to an order of reference, ECF No. 28, the Honorable Sarah L. Cave issued a report (the "R&R") recommending, *inter alia*, that the Court grant the Petition, *see generally* R&R, ECF No. 29. Before the Court are ITA's timely objections to the R&R. Objs., ECF No. 30; *see also* Resp., ECF No. 31. For the reasons stated below, the Court overrules ITA's objections and adopts the R&R in full.

# BACKGROUND[1]

I. Factual Background

    A. The Project

Pinnacle owns a five-story commercial building (the "Pinnacle Property") at 793 Madison Avenue in Manhattan. Pet. ¶¶ 1, 11. ITA's five-story commercial building (the "ITA Property") at 33 East 67th Street is adjacent to the Pinnacle Property. *Id.* ¶¶ 1, 13.

In spring 2020, Pinnacle submitted an application to the New York City Landmarks Preservation Commission (the "LPC") to construct an elevator in the backyard between the Pinnacle and ITA Properties. Opp. ¶ 49, ECF No. 10; *see generally* ECF No. 10-1. In May 2020, Pinnacle submitted a construction proposal (the "First Proposal") to the Landmarks Committee of Manhattan Community Board 8 (the "Committee"), specifying construction work for "elevator and lobby additions, façades, and replacement of HVAC equipment, internal stairs[,] and upper story windows." ECF No. 10-2 at 1; Opp. ¶ 50.

In June 2020, the Committee granted in part and denied in part the First Proposal. ECF No. 10-2 at 1–3. The Committee approved work on the Pinnacle Property's storefront but denied Pinnacle's request "to place a new elevator shaft in the [northeast] portion of the [back]yard," finding deficiencies in the proposed design and concluding that the proposed "elevator addition . . . along 67th [S]treet [was] not contextual and not appropriate within the historic district." *Id.* at 2–3.

Pinnacle then submitted a revised proposal (the "Second Proposal") to the Committee. ECF No. 10-4 at 1. In September 2020, the Committee granted the Second Proposal. *See*

---

[1] The Court presumes familiarity with the facts and procedural history of this action as detailed in the R&R, *see* R&R at 2–9, and recites only key facts and procedural details.

2

*generally* ECF No. 10-4. The Committee recognized that Pinnacle had "redesigned the façade along East 67th Street;" that the revised "design retains the masonry character of the building on 67th Street;" and that the revised design is thus "contextual and appropriate within the historic district." *Id.* at 1–2.

In December 2020, the LPC held a public hearing at which Pinnacle presented the proposed renovations (the "Project") that the Committee had approved. Opp. ¶ 58. Friends of the Upper East Side ("Friends"), a not-for-profit organization "dedicated to preserving and celebrating the architectural legacy . . . of the Upper East Side," appeared at the hearing to oppose the Project. *Id.* ¶ 60–61. Although Friends argued that the elevator should not be approved because the backyard's open space is uncommon in the neighborhood and should be preserved, it conceded that the Project was "allowable under current zoning resolution." ECF No. 10-5; *see* Opp. ¶ 61.

    B. Negotiations Between Pinnacle and ITA

In July 2021, Pinnacle informed ITA that Pinnacle had retained a contractor to renovate the Pinnacle Property and construct the backyard elevator. ECF No. 10-7 at 1. Pinnacle recognized that it was "obligated by the New York City Building Code to install protection on and around the [ITA Property]" and requested permission for its contractor to access the ITA Property and install the required protective measures. *Id.* Pinnacle also provided ITA with (1) "a copy of the preliminary site safety plan for the Project," which identified the proposed protective measures (the "Safety Plan"); and (2) a draft construction access license agreement (the "Draft Agreement"), which identified the proposed terms by which Pinnacle would gain access to the ITA Property. *Id.*; *see generally* ECF No. 10-8 (the Draft Agreement).

3

From August to September 2021, Pinnacle and ITA amicably revised the Draft Agreement. *See* ECF Nos. 10-8 to -11. In September 2021, Pinnacle informed ITA that it was still awaiting formal approval of the Project from the LPC, as well as a scaffolding permit from the New York City Department of Buildings (the "DOB"). ECF No. 10-11 at 1. In October 2021, ITA informed Pinnacle of concerns that ITA's architect, Kurt Hirschberg, had with the Project, including that "[t]here [were] no details provided for protection of [certain fixtures]" of the ITA Property and that the Safety Plan was incomplete. ECF No. 10-15 at 1–5; *see* Opp. ¶ 78. Pinnacle provided detailed responses to each of Hirschberg's concerns. *See* ECF Nos. 10-19 to -20. Additionally, Pinnacle twice invited Hirschberg to meet with Pinnacle's on-site team, but the meeting never occurred. *See* ECF No. 10-16 at 2; ECF No. 10-19 ("Pinnacle reiterates its request that [Hirschberg] meet with Pinnacle's construction team at the [P]roject site to continue these discussions regarding Pinnacle's obligation to protect [the ITA Property] during Pinnacle's upcoming construction project.").

In November 2021, the LPC formally approved the Project. Pet. ¶ 12; ECF No. 10-21 at 1. In March 2022, Pinnacle informed ITA that it had "received all required permits and approvals" for the Project. ECF No. 10-22 at 1. Pinnacle asked ITA to let Pinnacle know "whether [ITA] [was] willing to enter into an agreement to permit access to [the ITA Property] on reasonable terms (and what [ITA] [would propose] those terms to be)." *Id.* at 1–2. ITA replied that it would resume negotiations on the condition that Pinnacle pay ITA's legal fees within one week. ECF No. 1-25 at 96. The parties did not finalize the Draft Agreement, or any agreement allowing Pinnacle access to the ITA Property. Pet. ¶ 38.

II.  Procedural Background

On March 31, 2022, Pinnacle filed the Petition pursuant to RPAPL Section 881 in Supreme Court, New York County.  *See generally* Pet.  Under Section 881, when an owner "seeks to make improvements or repairs to real property so situated that such improvements or repairs cannot be made by the owner . . . without entering the premises of an adjoining owner or his lessee, and permission [] to enter has been refused," the owner may petition "for a license [] to enter."  RPAPL § 881.  Pinnacle sought the following 15-month license to access the ITA Property for purposes of installing and removing protective measures in connection with the Project:

> a. At the commencement of the Project:
> i. For two working days to permit workers to survey the existing condition of portions of the [ITA Property];
> ii. For two working days to permit workers to install the [vibration] Monitors on and about [the ITA Property];
> iii. For five working days to permit workers to install the Overhead Protection above [the ITA Property]; and
> b. At the conclusion of the Project:
> i. For five working days to permit workers to dismantle the Overhead Protection;
> ii. For two working days to permit workers to remove the [vibration] Monitors from on and about [the ITA Property]; and
> iii. For two working days to permit workers to conduct a survey of the existing condition of the [ITA Property].

Pet. ¶ 46.  In April 2022, the Honorable Paul A. Goetz ordered ITA to show cause why Pinnacle should not be granted the requested license.  ECF No. 1-29 at 1–3.

On May 11, 2022, before responding to the show cause order, ITA removed the Petition to this Court under 28 U.S.C. §§ 1441(d) and 1603(b), citing ITA's status as a governmental "agency or instrumentality" of the Republic of Italy, and invoking federal subject matter jurisdiction under 28 U.S.C. § 1330(a).  ECF No. 1 ¶¶ 3–5.  Pinnacle did not challenge removal.  ECF No. 5 at 1.  On May 19, 2022, ITA opposed the Petition, asserting counterclaims against

5

Pinnacle for negligence, alleging that, in the process of obtaining approval from the LPC, the Committee, and the DOB, Pinnacle violated New York City Administrative Code §§ 25-305(b)(1) and 3301.13.1 and Title 63, New York City Rules § 2-16. Opp. ¶¶ 109–26. ITA also asserted a third-party claim against the LPC, alleging negligent review and approval of the Project in violation of New York City Administrative Code § 25-307. *Id.* ¶¶ 127–32. The parties submitted extensive briefing on the Petition, the counterclaims, and the third-party claim. *See* ECF Nos. 13–16, 19–20, 26. The Court referred the Petition to Judge Cave for a report and recommendation. ECF No. 28.

III.  The R&R

Judge Cave issued a 45-page R&R in which she recommended that (1) the Petition be granted; (2) ITA's counterclaims be dismissed without prejudice; and (3) ITA's third-party claim be dismissed without prejudice. R&R at 1.

    A.  The Petition

Judge Cave first addressed the merits of the Petition. Section 881, as Judge Cave recognized, "allows a property owner to petition for a license to enter the premises of an adjoining owner when such entry is necessary for making improvements or repairs to the petitioner's property and the adjoining owner has refused such access." *Id.* at 18 (quoting *AIH Grp., LLC v. C.J.F. & Sons Enters., Inc.*, 63 Misc. 3d 1231(A), at *3 (N.Y. Sup. Ct. May 29, 2019)). A "proceeding pursuant to [Section 881] is addressed to the sound discretion of the court," which "must apply a reasonable standard in balancing the potential hardship to the applicant if the petition is not granted against the inconvenience to the adjoining owner if it is granted." *Id.* at 18–19 (citation omitted). As described in the R&R:

> The factors New York courts consider in determining whether to grant a license under Section 881 "include the nature and extent of the requested access, the

6

>duration of the access, the protections to the adjoining property that are needed, the lack of an alternative means to perform the work, the public interest in the completion of the project, and the measures in place to ensure the financial compensation of the adjoining owner for any damage or inconvenience resulting from the intrusion[.]"

*Id.* at 19–20 (quoting *Queens Coll. Special Projects Fund, Inc. v. Newman*, 154 A.D.3d 943, 944 (N.Y. App. Div. 2017)).

Judge Cave concluded that most of the Section 881 factors weigh in favor of granting the Petition. *Id.* at 27. Specifically, she explained that Pinnacle seeks a license to enter the ITA Property solely for the purposes of protecting ITA's property, employees, and visitors during the course of the Project; that Pinnacle provided ample evidence of how it will protect the ITA Property; that the limited access to the ITA Property will have a minimal impact on ITA; that a license is necessary for Pinnacle to complete the Project and comply with applicable laws; that ITA has not presented alternative methods of construction that Pinnacle could employ to complete the Project; and that Pinnacle is obligated to indemnify ITA for any actual damages resulting from the Project. *See id.* at 21–27.

Judge Cave also noted, however, that some considerations weigh against granting the Petition. First, she explained that although Pinnacle seeks a 15-month license, 15 months "is unreasonably long given that the [proposed license] provides protections for only six months." *Id.* at 28. Second, she acknowledged ITA's concerns surrounding its financial protection throughout the term of the license and ITA's right to exclude outsiders. *See id.* at 28–31.

After balancing these considerations, Judge Cave recommended that the Petition be granted but that Pinnacle's license be modified as follows: (1) "the duration of the [l]icense [shall be] reduced from 15 to [9] months;" (2) "all costs relating to installing, maintaining, and removing the Overhead Protection and [vibration] Monitors" shall be paid by Pinnacle;

7

(3) "Pinnacle shall return the ITA Property to its original condition within ten days of the [l]icense's expiration or the Project's completion, whichever is earlier;" (4) "Pinnacle shall pay ITA a fee of $3,000.00 per month;" (5) "Pinnacle and [its contractor] shall procure, maintain, and name ITA as an additional insured to a commercial general liability insurance policy through the duration of the Project;" and (6) "any damages ITA suffers from the [l]icense shall be repaired at Pinnacle's sole expense." *Id.* at 27–28, 31–32.

B. The Counterclaims and Third-Party Claim

Next, Judge Cave addressed ITA's counterclaims against Pinnacle and recommended that they be dismissed without prejudice for lack of subject matter jurisdiction. *See id.* at 32–39. Finally, Judge Cave recommended that the Court exercise its discretion to deny, without prejudice, ITA's request to implead the LPC because there is no indication that the LPC was properly served with notice of ITA's third-party claim. *See id.* at 39–44.

## DISCUSSION

I. Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court may adopt those portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted).

When a party makes specific objections, the Court reviews *de novo* those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, when a party "makes only conclusory or general objections, or simply reiterates the original arguments," the Court reviews the R&R "strictly for clear error." *Harris v. TD Ameritrade Inc.*,

338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018) (citation omitted), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order); *see also Bailey v. U.S. Citizenship & Immigr. Servs.*, No. 13 Civ. 1064, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) ("[O]bjections that are not clearly aimed at particular findings . . . do not trigger *de novo* review."); *Edwards v. Fischer*, 414 F. Supp. 2d 342, 347 (S.D.N.Y. 2006) ("[W]here objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [motion], reviewing courts should review a report and recommendation for clear error." (citation omitted)). An R&R is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

II. <u>ITA's Objections</u>

ITA objects to Judge Cave's recommendation that the Petition be granted and that ITA's counterclaims be dismissed without prejudice.[2] The Court addresses each category of objections in turn.

---

[2] The first ten pages of ITA's objection memorandum list what ITA describes as "critical facts not considered" by the R&R. *See* Objs. at 3–10 (capitalization altered). According to ITA, the R&R "failed to state," *inter alia*, that Pinnacle "avoided [informing the LPC] that the elevator is not necessary;" that "an external elevator did not exist prior to [Pinnacle's] application;" that Pinnacle has not "visually show[n] the Court the physical impact of the elevator;" that Pinnacle "did not present to LPC commissioners any evidence about the external elevator;" that Pinnacle "never showed [ITA] accurate drawings of the [P]roject;" and that Pinnacle "did not provide any clarification regarding [Hirschberg's] concerns." *See id.* These assertions, which are largely unsupported or conclusory, are not "specific and clearly aimed at particular findings in the [R&R] as to justify *de novo* review, or to justify altering the [R&R's] recommended outcome." *Richardson v. City of New York*, No. 21 Civ. 5080, 2023 WL 1777323, at *2 n.2 (S.D.N.Y. Feb. 6, 2023) (citation omitted); *see SEC v. Altieri*, No. 20 Civ. 6343, 2023 WL 110373, at *1 (S.D.N.Y. Jan. 5, 2023) ("[W]here a party makes only conclusory or general objections, . . . the Court reviews the [R&R] only for clear error." (cleaned up)). Moreover, Judge Cave made clear that the R&R was based on consideration of the entire record, including facts or allegations not specifically mentioned. *See* R&R at 2 n.1. The Court reviews the R&R for clear error and finds none. *See Brown v. Perez*, No. 13 Civ. 4615, 2014 WL 5343309, at *2 (S.D.N.Y. Oct. 21, 2014).

A. The Petition

ITA raises numerous objections to the R&R's weighing of the Section 881 factors. *See* Objs. at 11–20. Specifically, ITA argues that the license is not necessary because the "[P]roject is not necessary" and thus "entry [to the ITA Property] is not necessary;" that Pinnacle "does not know how to [protect the ITA Property];" that the R&R's recommendation of a 9-month license is "irrational and arbitrary;" and that "the [R&R] does not discuss" the "long-term construction damages" or the "historical and preservation damages" that the Project will cause. *See id.* at 12–19. In sum, ITA contends that the R&R "did not apply the . . . reasonableness balancing test correctly." *See id.* at 19–20.

ITA's objections to the R&R's balancing of the Section 881 factors misstate the applicable law, mischaracterize Judge Cave's analysis of the factors, or are contradicted by the record. First, ITA's argument that the license is not necessary because the "[P]roject is not necessary" misstates the Section 881 standard. The question under Section 881 is not whether the Project itself is necessary, but whether entry to the ITA Property is necessary for Pinnacle's construction of the Project. Nothing in Section 881 qualifies the "improvements" or "repairs" for which an owner may seek a license under the statute. Instead, Section 881 makes clear that an owner can seek a license to enter when "improvements or repairs cannot be made by the owner" without "entering the premises of an adjoining owner" who has refused entry. RPAPL § 881. Section 881 further provides that the owner must "state the facts making *such entry* necessary." *Id.* (emphasis added). Here, Pinnacle states, and ITA does not dispute, that entry to the ITA Property is necessary to complete the Project and comply with applicable laws. Pet. ¶ 40; ECF No. 16 at 8. That Pinnacle may not need to embark on the Project is immaterial to the Court's inquiry under Section 881.

Second, ITA's objection that Pinnacle "does not know how to [protect the ITA Property]"

10

is contradicted by the record.  Indeed, Judge Cave addressed this argument and correctly noted that "Pinnacle has provided ample evidence of how it will protect the ITA Property."  R&R at 21; *see also Harris*, 338 F. Supp. 3d at 174 (stating that when a party "simply reiterates the[ir] original arguments," the Court reviews those portions of the R&R "strictly for clear error" (citation omitted)).  As stated in Pinnacle's proposed license, Pinnacle intends to "survey the existing condition of portions of the [ITA Property]," "install . . . Overhead Protection above [the ITA Property]," and "install . . . [vibration] Monitors on [the ITA Property]."  Pet. ¶ 46.  Pinnacle defines the Overhead Protection as "a system of cantilevered supports . . . that extends over (but does not touch)" the ITA Property, and the Monitors as "vibration monitors" that will be installed "only during [Pinnacle's] performance of the excavation, foundation[,] and backfill portion[s]" of the Project.  *Id.* ¶¶ 13, 16.  These protections have been approved by the DOB.  *Id.* ¶ 17.  Additionally, the record reflects the many exchanges between Pinnacle and ITA concerning Pinnacle's proposed protective measures.  *See, e.g.*, ECF Nos. 1-18, 1-22 to -23, 1-25.  As Judge Cave recognized, Pinnacle even revised its proposal in response to ITA's concerns.  *See, e.g.*, Pet. ¶ 16 (stating that Pinnacle's proposed Overhead Protection was in response to ITA's "refusal to permit [Pinnacle] to erect [other proposed protection]"); ECF No. 1-26 ¶¶ 3–4.  Accordingly, the Court is not left with the "definite and firm conviction" that the R&R erred in concluding that Pinnacle "provided ample evidence of how it will protect the ITA Property."  *Easley*, 532 U.S. at 242 (citation omitted); R&R at 21.

Third, ITA contends that the R&R's recommendation that the license term be reduced from 15 to 9 months is "irrational and arbitrary."  Objs. at 14.  Not so.  Judge Cave offered a thorough and well-reasoned explanation for her recommendation.  First, she explained the concern with the 15-month term requested by Pinnacle: "Although [Pinnacle] anticipates its most

11

elaborate protective measure, the Overhead Protection, to be removed within six months of installation, Pinnacle unreasonably requests more than twice as much time to account for unspecified issues and weather delays." R&R at 22–23 (citation omitted). Judge Cave then proposed reducing the term of the license to 9 months, reasoning that "a 15-month license exceeds the scope of what justice requires and unjustly imposes on ITA's right to exclude others," and that 9 months is closer to the amount of time for which Pinnacle's proposed license provides protections. *Id.* at 28–29. Nothing about Judge Cave's reasoning or recommendation is "irrational" or "arbitrary."

Fourth, ITA argues that Judge Cave did not discuss the "long-term construction damages" or the "historical and preservation damages" that the Project will cause. The Court disagrees. Judge Cave considered the "measures in place to compensate ITA for *any* damage or inconvenience resulting from the intrusion." *Id.* at 26 (emphasis added). The R&R noted that "Pinnacle has offered to protect ITA's financial interests throughout the duration of the Project by naming it as an insured on [its contractor's] general liability insurance policies" and "will be obligated to indemnify ITA for any actual damages resulting from the Project." *Id.* at 27. Indeed, Judge Cave recommended that the license be modified to include five additional terms to further protect the ITA Property, including that Pinnacle shall "reimburse ITA for any damages sustained by the ITA Property resulting from the Project" and shall "procure, maintain, and name ITA as an additional insured to a commercial general liability insurance policy." *Id.* at 29–32.

In light of the above, the Court cannot find that Judge Cave, by carefully weighing the Section 881 factors and proposing new license terms to further protect the ITA Property, "did not apply the . . . reasonableness balancing test correctly."[3] Objs. at 20.

---

[3] ITA asks the Court, for the first time, to adopt seven additional modifications to the license. Objs. at 21–23. ITA does not dispute that these proposed modifications were not raised before Judge Cave. "It is well-settled that a

12

B.  The Counterclaims

ITA objects to the R&R's recommendation that its counterclaims should be dismissed without prejudice. Specifically, ITA argues that the Court has and should exercise "supplemental jurisdiction over [the] [c]ounterclaims pursuant to 28 U.S.C. 1367(a)." Objs. at 24.

Judge Cave found, and ITA concedes, that the counterclaims are permissive as opposed to compulsory. R&R at 38; Objs. at 23. Permissive counterclaims "require an independent jurisdictional basis." R&R at 38 (quoting *Four Seasons Solar Prods. Corp. v. Sun Sys. Prefabricated Solar Greenhouses, Inc.*, 101 F.R.D. 292, 296 (E.D.N.Y. 1983)). Judge Cave concluded, and ITA does not dispute, that ITA did not "allege any basis for subject matter jurisdiction over the [c]ounterclaims, and, therefore, has not satisfied its 'burden of establishing the Court's jurisdiction over the subject matter of the[] [counter]claims.'" *Id.* (quoting *Goldman Marcus, Inc. v. Goldman*, No. 99 Civ. 11130, 2000 WL 297169, at *3 (S.D.N.Y. Mar. 21, 2000)).

Judge Cave then examined whether there is an independent basis for supplemental jurisdiction under 28 U.S.C. § 1367(a). *See id*. Under § 1367(a), the Court may, but is not required to, exercise supplemental jurisdiction over the counterclaims if they "are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "[C]laims constitute the 'same case or controversy' when they arise from a 'common nucleus of operative fact.'" *Bray v. City of New York*, 356 F. Supp. 2d 277, 282 (S.D.N.Y. 2004) (citing *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213–14 (2d Cir. 2004)). Judge Cave found the common nucleus of operative fact element missing "because none of the events or facts alleged in the [c]ounterclaims are necessary nor relevant for consideration of

---

district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Matrix Polymers Inc. v. A-E Packaging, Inc.*, No. 15 Civ. 6040, 2017 WL 2189546, at *2 (S.D.N.Y. May 18, 2017) (citation omitted). Because these new conditions were not included in ITA's original motion papers, the Court shall not consider them. *See id.*

13

the Petition." R&R at 38. Specifically, she explained that "[d]etermining whether Pinnacle was negligent will require a review of Pinnacle's duties to ITA and conduct leading up to the filing of the Petition," whereas the Section 881 factors consider "the reasonableness of granting access to the ITA Property[] and whether Pinnacle's plans sufficiently protect the ITA Property." *Id.* at 36.

ITA now argues that the Petition and counterclaims arise from the same common nucleus of operative fact because "the construction of [the] external elevator is at the . . . very core of this case" and "[t]he facts (and legal requirements) that [Pinnacle] should show to obtain and maintain an entry license into [the ITA Property] are the same [that Pinnacle] must maintain with the LPC and the DOB." Objs. at 24–25. The Court disagrees. Supplemental jurisdiction "does not extend to claims that involve different rights, different interests, and different underlying facts." *Romano v. A360 Media, LLC*, No. 20 Civ. 8988, 2023 WL 348459, at *3 (S.D.N.Y. Jan. 20, 2023) (citation omitted). Although the Petition and counterclaims both arise from the Project generally, they involve different rights, interests, and underlying facts. The Section 881 legal standard, under which the Court must balance the competing interests surrounding the Petition, is different from the negligence standard underlying ITA's counterclaims, which would require the Court to analyze, among other factors, whether Pinnacle owed a duty of care to ITA and whether it breached that duty in providing information to the LPC, the Committee, and the DOB. Accordingly, the Court shall not exercise supplemental jurisdiction over the counterclaims.[4]

The Court has considered all of ITA's objections. To the extent any are not expressly

---

[4] ITA also objects to the R&R's recommendation that the Court dismiss without prejudice ITA's third-party claim against the LPC because ITA did not effect service on the LPC. Objs. at 28. Specifically, ITA argues that it was not required to serve the LPC because ITA "was not granted permission from this Court to implead" the LPC, and serving a nonparty "becomes a requirement only after the Court discretionally allows [a] defendant to implead a nonparty." *Id*. Not so. "Generally, a defendant may commence a third-party action only upon leave of court where the defendant seeks to commence that action more than ten days after filing its answer." *Dos Santos v. Terrace Place Realty, Inc.*, 433 F. Supp. 2d 326, 335 (S.D.N.Y. 2006) (citing Fed. R. Civ. P. 14(a)). Here, the Court's leave was not necessary because ITA filed its third-party claim against the LPC with its answer to the Petition, and was thus required under Rule 14 to serve its answer on the LPC yet failed to do so. *See* Opp.; Fed. R. Civ. P. 14.

discussed herein, the Court has found that they are conclusory or otherwise an effort "to engage the district court in a rehashing of the same arguments set forth in the original [motion]." *Edwards*, 414 F. Supp. 2d at 347. The Court has reviewed those objections, as well as any portions of the R&R to which ITA does not object, for clear error and finds none.

## CONCLUSION

For the foregoing reasons, the Court OVERRULES ITA's objections to the R&R and ADOPTS the R&R in full. The Clerk of Court is respectfully respected to terminate all motions and close the case.

SO ORDERED.

Dated: February 3, 2025
      New York, New York

_____
ANALISA TORRES
United States District Judge